

# The Attorney General of Texas

March 26, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas. Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Clayton T. Garrison
Executive Director
Employees Retirement System of Texas
P. O. Box 13207
Austin, Texas    78711

Opinion No.   JM-140

Re:   Whether a state law enforcement officer injured while working as a private security guard is entitled to occupational disability benefits from the State of Texas

Dear Mr. Garrison:

You have provided us with the following information. You have received an application for occupational disability retirement benefits from a law enforcement officer who has been employed by the Department of Public Safety for four years and eight months. According to the police offense report, the officer was working "off-duty in plain clothes as security" in a grocery store in Houston in early September of 1982. Two persons robbed the store and shot the officer when he tried to apprehend them. Your medical board has determined that the applicant is now disabled as a result of the injury. Workers' compensation benefits are being paid to the officer, with the grocery store designated as the employer.

You request our opinion on the following four questions:

1.   Is a commissioned peace officer considered to be on duty at all times, even when being compensated by another employer?

2.   Was the applicant in the course of employment for the grocery store or for the state at the time of his injury?

3.   Was the risk of the disabling injury peculiar to the applicant's duties as a state trooper?

4.   If it could be established that the grocery store hired only off-duty state police to serve as security guards, would your answer to the above be affected in any way?

The relevant statutory language governing occupational disability retirement benefits is found in Title 110B, which sets forth the powers and duties of the Public Retirement Systems. Section 24.207 of Title 110B provides the following in pertinent part:

> (a) An annuity payable because of an <u>occupational disability that directly results from a risk or hazard to which law enforcement or custodial officers are exposed because of the nature of law enforcement or custodial duties</u> is payable under the same terms and conditions that apply to other occupational disability retirement annuities under this subtitle, except that the source and amount of the annuity are as provided by this section. (Emphasis added).

Section 21.001(12) of Title 110B declares that "occupational death or disability"

> means death or disability from an injury or disease that directly results from a specific act or occurrence determinable by a definite time and place, and <u>directly results from an inherent risk or hazard peculiar to a duty that arises from and in the course of state employment.</u> (Emphasis added).

Section 21.001(9) further provides that

> 'Law enforcement officer' means a member of the retirement system who has been commissioned as a law enforcement officer <u>by the Department of Public Safety</u>, the Texas Alcoholic Beverage Commission, the State Purchasing and General Services Commission, Capitol Area Security Force, or the Parks and Wildlife Department and who is recognized as a commissioned law enforcement officer by the Commission on Law Enforcement Officer Standards and Education. (Emphasis added).

An officer commissioned by the Department of Public Safety is a peace officer whose duty it is "to preserve the peace within his jurisdiction." Code Crim. Proc. arts. 2.12(4), 2.13. Peace officers must be certified by the state. V.T.C.S. art. 4413(29aa) §2(c). They are vested with privileged authority to make arrests, article 14.03 of the Code of Criminal Procedure, and to possess handguns, sections 46.02 and 46.03 of the Penal Code. There is ample authority for the proposition that a commissioned peace officer is, unlike other employees, on duty at all times and is therefore obligated to exercise

his authority whenever there is a breach of the peace within his jurisdiction.

The Texas Court of Criminal Appeals has declared:

> It is the law in this state that a police officer's 'off duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity.

Wood v. State, 486 S.W.2d 771, 774 (Tex. Crim. App. 1972), citing Monroe v. State, 465 S.W.2d 757 (Tex. Crim. App. 1971) and Simms v. State, 319 S.W.2d 717 (Tex. Crim. App. 1958). Accordingly, we conclude that a commissioned peace officer is on duty all of the time insofar as he is obligated to exercise his authority whenever he observes a breach of the peace in his jurisdiction.

You next ask whether the injured officer was injured in the course of employment for the grocery store or for the state at the time of his injury. The mere fact that a commissioned peace officer is on duty at all times does not mean that any injury which he receives occurs in the course of official employment. The determining factor appears to be whether the commissioned peace officer is acting in furtherance of his official duties or is acting in a private capacity and only incidentally to his official duties.

There is a line of cases in which, under the given facts, a commissioned peace officer was held to have acted in a private capacity rather than in furtherance of his official duties. In Jeanes v. State, 132 S.W. 352 (Tex. Crim. App. 1910), a constable requested the accused to step aside for a private discussion of a private matter which resulted in an assault of the constable. The court held that the constable was not at the time of his assault engaged in the performance of any lawful duty of his office. Id. at 353. In Curlin v. State, 209 S.W. 666 (Tex. Crim. App. 1919), a justice of the peace was assaulted by the defendant while the justice of the peace was walking on the sidewalk toward his office. The court held that, even though the defendant knew the status of the injured party, there was no evidence that the injured party was discharging any official duty at the time or attempting to discharge any such duty.

The case of Hudson v. St. Louis Southwestern Railway Co. of Texas, 293 S.W. 811 (Tex. Comm'n. App. 1927, holding approved) concerned a wrongful death action which arose as a result of a state ranger being employed to protect the property of a railway company. The court's opinion should be quoted in extenso:

> It seems to be well settled that a public peace officer may become the private employee of another for the purpose of guarding and protecting such other's property, and the test of liability for a

> tort committed by such officer or employee seems to be in what capacity he was acting at the time the act was done. One may be both a public peace officer and a private employee as watchman for an individual or corporation, at the same time, and it does not of course follow that the official character of the individual would be any protection to an action against the employer for his acts done in the course and within the scope of the employment. The question is, 'Whose servant was he?' And, further, 'Was the act complained of committed while he was acting within the scope of his employment, if a servant of another?' . . .
>
> . . . .
>
> The material inquiry is whether or not at the time of the killing he was an employee of the company acting within the scope of such employment. Whether or not he was at the same time a peace officer is of little or no practical value in determining the issue . . . .
>
> Now, public peace officers are not concerned with the guarding of private property. Their duties pertain primarily to the public -- the arresting of offenders and the suppression and prevention of crime, in a measure. The guarding of private property is not the function of a public official, and, when he is thus engaged, he has stepped aside from his official duties. (Emphasis added).

Hudson v. St. Louis Southwestern Railway Co. of Texas, supra, at 812-813.

In Hudson, there was no evidence showing that the officer killed the decedent in furtherance of his public duty. The killing was not incident to a lawful arrest and not in self-defense. The court concluded that the officer was acting, then, in a private capacity as an employee of the company. The company was accordingly held to be liable for any tortious act committed by such employee who was acting within the scope of his employment. See Lancaster v. Carter, 255 S.W. 392 (Tex. Comm'n App. 1923, judgmt adopted); Rucker v. Barker, 192 S.W. 528 (Tex. 1917); Texas and New Orleans Railroad Co. v. Parsons, 113 S.W. 914 (Tex. 1908); Morris v. State, 523 S.W.2d 417 (Tex. Crim. App. 1975); George v. State, 506 S.W.2d 275 (Tex. Civ. App. - Houston [1st Dist.] 1974, no writ).

Another line of cases has held, under the facts given, that a commissioned peace officer was acting in furtherance of his official capacity and the rights and duties which devolved upon him were determined accordingly.  In both Monroe v. State, supra, and Wood v. State, supra, the injured parties were police officers, in uniform, who were employed secondarily as, respectively, a security guard in a nightclub and a parking lot attendent.  Both were injured as they attempted to make lawful arrests of defendants.  In Thompson v. State, 426 S.W.2d 242 (Tex. Crim. App. 1968), an "off-duty" policeman in plain clothes who was working secondarily as an apartment security guard was attempting to break up a rowdy party when, after he had identified himself as a police officer, he was assaulted.  In all three of these cases, the court held that the particular activity in which the peace officers were engaged when they were assaulted was in the lawful discharge of their duties as peace officers.  See Moore v. State, 562 S.W.2d 484 (Tex. Crim. App. 1978); Simms v. State, supra. On the basis of the facts which you provide, we conclude that although the peace officer was employed in a private capacity by the grocery store at the time he was injured, he was nonetheless acting in furtherance of his official duties -- specifically, the duty to apprehend an armed robbery suspect.  The moment that he observed a breach of the peace he was no longer acting in a private capacity.  At that moment, his conduct was no longer subject to the control of the manager of the grocery store.  Rather, it was dictated by his obligation as a peace officer to apprehend the suspect.  Had the peace officer been coincidently in the grocery store as a customer, for example, the duty to apprehend the suspect would clearly have devolved upon him.  There is no question that, in such an instance, the peace officer would be acting within the scope of his employment for the state even if he was "off-duty" at the time.  In this instance, his private duty as an employee to guard and protect private property is incidental to his public duty to apprehend suspects committing felonies.

Your third question asks whether the risk of the disability injury was peculiar to the applicant's duties as the state trooper. We conclude that it was.  Section 21.001(12) of Title 110B defines "occupational death or disability" to refer to a death or disability which, inter alia, "directly results from an inherent risk or hazard peculiar to a duty that arises from and in the course of state employment."  We are hard-pressed to think of a risk more inherent or a hazard more peculiar to the duty imposed upon peace officers than the risk or hazard of being injured or killed while acting in furtherance of official duties.  Because a commissioned peace officer is obligated to exercise his authority anytime that he witnesses a breach of the peace in his jurisdiction, it is manifest that he constantly runs the risk of being injured in the line of duty.  We therefore answer your third question in the affirmative.

Your fourth question asks whether our answers to any of the preceding questions would be affected in any way if it were

established that the grocery store hired only off-duty state police to serve as security guards. We conclude that they would not. Because of the peculiar duty imposed upon peace officers to be "on duty" at all times, the fact that a peace officer was injured in furtherance of his duties while being secondarily employed by a private third party in no way affects the duty owed by the peace officer to the public. Accordingly, we answer your fourth question in the negative.

We do not here address the issue as to whether the state would be liable for damages in a suit brought by someone injured by a peace officer who was employed by a private employer at the time the injury took place.

## S U M M A R Y

A commissioned peace officer is on duty at all times insofar as he has a duty to prevent any breach of the peace which he observes in his jurisdiction. In an instance in which a commissioned peace officer is secondarily employed by a private third party and is injured while acting in furtherance of his official duties, such peace officer is considered to be injured while in the course of his employment for the state. The risk of being disabled through injury incurred while in the course of attempting to apprehend a suspected felon is a risk clearly peculiar to a commissioned peace officer's duties as a state trooper. Our conclusions would in no way be affected by the fact that the private third party hires only "off-duty" state troopers.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jim Moellinger
Assistant Attorney General

p. 602

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton